UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

U.S. BANK NA, successor trustee to Bank of America, NA,
Successor in interest to LaSalle Bank, NA,
as trustee on behalf of the holders of the
WaMU Mortgage Pass-Through Certificates,
Series 2006-AR13,
    Plaintiff,

    v.                                  CIVIL ACTION NO. 22-11853-MPK

ANASTASIA TASLIS, as personal representative of the
Estate of Constantine Taslis
a/k/a Kostas Taslis,
    Defendant/Counterclaimant,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
and GMAC MORTGAGE LLC,
    Parties-in-interest

FINAL ORDER ON DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION (#76)

KELLEY, U.S.M.J.

I. Introduction.

Constantine Taslis, who passed away in 2023, and his wife, who passed away in 2015, defaulted on their mortgage in 2008. In this 2022 suit, plaintiff seeks to conduct a foreclosure sale of the property. (#1.) Mr. Taslis's daughter, as personal representative of his estate, defends, and pursues one surviving counterclaim for declaratory relief, narrowed by District Judge Sorokin's order on plaintiff's motion to dismiss. (#21); *see also* #98 (declining to permit amendment of counterclaims).

1

The court issued a "Preliminary Order" on defendant's motion to dismiss for lack of subject matter jurisdiction.[1] The court rejected defendant's argument that dismissal was appropriate because plaintiff had not proven the citizenship of the trust members or certificate holders and the court declined to order plaintiff to proffer evidence of trust member or certificate holder citizenship. (#98 at 18.) However, the court did order plaintiff to proffer evidence that it is a real party to the controversy under *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), that is, evidence that plaintiff possesses "certain customary powers to hold, manage, and dispose of assets for the benefit of others." (#98 at 19) (quoting 446 U.S. at 464). Plaintiff has made a proffer of evidence, (#99), and defendant has responded, (#100). Plaintiff has filed a further response. (#103.) For the reasons explained below, defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

II. *Navarro*'s Rule Controls.

In the Preliminary Order, the court explained at length that defendant's understanding of the law is incorrect. (#98 at 9-20.) *Americold*'s[2] rule -- in essence, that a trust must be a traditional one or else it takes the citizenship of all its members or certificate holders, for purposes of diversity jurisdiction -- would control if plaintiff were the trust. But plaintiff is not the trust. As defendant herself acknowledges, *see*, *e.g.*, #100 at 1, plaintiff is the trustee. See #98 at 9 & n.10. In these

---

[1] As explained in this February 25, 2025 "Preliminary Order on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (#76) [and] Orders on Defendant's Motion to Stay (#96); Defendant's First Motion to Amend (#62); Defendant's Second Motion to Amend (#89); and Plaintiff's Motion for Sanctions (#93)," as well as today's "Order of Reassignment to District Judge Sorokin for Review of these Reports and Recommendation [and] Reports and Recommendation on Plaintiff's Motions to Assign Leases and Rents and to Appoint a Receiver (#79) and for Entry of Default Judgment (#85)," the court is retaining jurisdiction over plaintiff and defendant, who have consented pursuant to 28 U.S.C. § 636(c). (#98 at 2-3); *see* #105 at 2-6.

[2] *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378 (2016).

2

circumstances, *Navarro*'s rule controls. If plaintiff is found to be a real party to the controversy, then there is no apparent claim of a lack of diversity jurisdiction.[3] Plaintiff proffers that it is a citizen of Ohio, *see* #98 at 10, n.11, and defendant does not dispute that proffer. Nor does she dispute that, when the complaint was filed, Mr. Taslis was a citizen of Massachusetts. *See id*. at 10. The parties-in-interest are not alleged to be citizens of Massachusetts. *See id*. at 10, n.13.

In response to plaintiff's *Navarro* proffer, defendant insists that the court's understanding of the law, especially *BRT Management LLC v. Malden Storage LLC*, 68 F.4th 691 (1st Cir. 2023), is incorrect. (#100 at 1-2, 5-6.) Her argument fails for the reasons already thoroughly explained. As plaintiff correctly argues in its further response, given that it is the trustee, not the trust, this case is not like *BRT*, and defendant is conflating two distinct legal standards when arguing that the trust is a separate legal entity from the trustee. (#103 at 6-8); *see* #100 at 4-5. To the extent that her response to plaintiff's *Navarro* proffer can be construed as a motion for reconsideration, that motion is denied.

III. <u>Plaintiff's *Navarro* Proffer is Sufficient</u>.

"Generally, once challenged, 'the party invoking subject matter jurisdiction…has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction.'" *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992) (quoting James W. Moore et al., *Moore's Federal Practice* ¶ 0.71[5.—1] (2d ed. 1985)); *see also Media Duplication Srvcs., Ltd. v. HDG Software, Inc*., 928 F.2d 1228, 1235-1236 (1st Cir. 1991) ("Once jurisdictional allegations are challenged, the party asserting diversity has the burden of establishing those allegations with competent proof. … No presumption of truthfulness attaches to the allegations")

---

[3] Only if plaintiff were found not to be a real party to the controversy would the court proceed from the *Navarro* analysis to *Americold*'s.

(citations omitted). Courts that have examined whether the plaintiff, under *Navarro*, has proffered sufficient evidence that it is a real party to the controversy have applied the preponderance standard. *See*, *e.g.*, *U.S. Bank Tr., N.A., as Trustee for LSF9 Master Participation Tr.*, #16-cv-7033-CS, 2018 WL 11453113, at *2 (S.D. N.Y. Dec. 19, 2018); *Rodriguez v. Deutsche Bank Nat'l Tr. Co.*, #16-cv-1597-GHM, 2017 WL 371141, at *3 (S.D. Tex. Jan. 26, 2017).

Defendant argues that plaintiff bears a heightened burden, misleadingly citing cases in which <u>the defendants</u>, seeking removal to federal court, bore the burden of proving by clear and convincing evidence that the plaintiffs fraudulently joined nondiverse defendants in order to defeat diversity jurisdiction and prevent removal. (#100 at 1 & n.1) (citing *DeSilva v. Germany*, 514 F.Supp.3d 393, 398 (D. Mass. 2021) ("*To succeed on a claim of fraudulent joinder*, the defendant must demonstrate its entitlement to proceed in federal court by 'clear and convincing evidence'") (emphasis supplied) (quoting *Surabian Realty Co., Inc. v. CUNA Mut. Grp.*, 245 F. Supp. 3d 297, 299 (D. Mass. 2017)). The rationale for the heightened burden is two-fold:

> The first issue involved in resolving an allegation of fraudulent joinder is whether the plaintiff has stated a claim against the nondiverse defendant. In doing so, all disputed issues of fact concerning that defendant's liability must be resolved in the light most favorable to the plaintiff. This is done to prevent the trial court from having to try the entire case in order to determine whether a claim has been stated against a particular defendant. … In this manner the district court avoids "trespass upon the judicial 'turf' of the state courts." ...
>
> If, in a fraudulent joinder case, a claim is found to have been stated against a nondiverse defendant, the only way to attack the joinder is by proving fraud in the plaintiff's pleading of jurisdictional facts. ... As with any allegation of fraud, it must be proved by clear and convincing evidence. …

*Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990) (first citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981); then quoting *Miller*, 663 F.2d at 554; then citing *Miller*,

663 F.2d at 549). But defendant is not seeking removal to federal court; plaintiff filed the suit here. And, if anyone is claiming fraud, it is <u>defendant</u>, not plaintiff.[4]

Plaintiff has submitted competent and adequate proof that it is a real party to the controversy, and the court so finds, under the correct, preponderance of the evidence standard. That is, plaintiff has met its burden under *Navarro*.

Plaintiff proffers, *see* #99 at 2, and defendant does not develop any contrary argument or record, *see* #100 at 2-6, that the terms of the trust are established by the Pooling and Servicing Agreement ("PSA") dated September 1, 2006.[5] Pursuant to the PSA, that trust is a Delaware statutory one, and the PSA is its "governing instrument:"

> …It is the intention of the Company, the Servicer, the Trustee and the Delaware Trustee that the Trust constitute a statutory trust under the Statutory Trust Statute,[6] that this Agreement constitute the governing instrument of the Trust, and that this Agreement amend and restate the Original Trust Agreement…

---

[4] Similarly, also in the removal context, the burden of proving that a party has nominal status and is therefore not a real party to the controversy is borne by the party asserting nominal status. *Hofmann v. Fasig-Tipton, N.Y., Inc.*, #90-cv-1074-HGM, 1991 WL 5867, at *4 (N.D. N.Y. Jan. 18, 1991) (citing *Nannuzzi v. King*, 660 F. Supp. 1445, 1449 (S.D. N.Y. 1987)); *see Fed. Ins. Co. v. Tyco Int'l, Ltd.*, 422 F. Supp. 2d 357, 388-389 (S.D. N.Y. 2006) ("The removing party bears the burden of demonstrating that a nondiverse defendant is a formal or nominal party whose citizenship may be ignored for diversity purposes. … The question of whether a party is nominal appears to be governed by essentially the same legal standard as whether a party is fraudulently joined") (cleaned up) (citations omitted); *see also Lucas v. Verizon Comm'ns, Inc.*, #20-cv-5542-AJN, 2021 WL 1226889, at *3 (S.D. N.Y. Mar. 31, 2021).

[5] Plaintiff submits excerpts of the PSA. (#99-1 at 1-12; #103-1 at 1-34.) The PSA has been filed with the Securities and Exchange Commission, *see* #99 at 2, n.4, and is available at: sec.gov/Archives/edgar/data/1374625/000127727706000724/exh41to8kpsawamu2006_ar13.htm (last visited April 10, 2025). When citing to this link, the court simply uses "SEC Link."

[6] The PSA defines "Statutory Trust Statute" as "Chapter 38 of Title 12 of the Delaware Code, 12 Del.C. §3801 <u>et seq</u>., as the same may be amended from time to time" (hereinafter, the "DSTA") (#99-1 at 2.)

5

(#99-1 at 5) (Section 2.01).[7]

Plaintiff proffers, *see* #99 at 2, and defendant does not develop any contrary argument or record, *see* #100 at 2-6, that the PSA appointed LaSalle Bank National Association as the trustee but in 2008, LaSalle merged with Bank of America National Association ("BANA")[8] and in 2010, U.S. Bank acquired BANA's trust administration business.[9] Thus plaintiff is the successor trustee.[10]

Defendant asserts that the PSA is an "unexecuted" "alleged Trust document" and that plaintiff has not proffered "actual activity in management of the Trust or this asset in particular…." (#100 at 2.) But Exhibit A to plaintiff's *Navarro* proffer includes the signatures of the parties to the PSA. (#99-1 at 10, 11, 12.) Anyway, a Delaware statutory trust need not be executed. *See* 12 Del. Code § 3801(c) (eff. to July 31, 2010); *see also* 12 Del. Code § 3801(e) (eff. Aug. 1, 2024).

---

[7] As of September 1, 2006, Del. Code tit. 12, § 3801(c) defined "[g]overning instrument," in part, as "any instrument (whether referred to as a trust agreement, declaration of trust or otherwise) which creates a statutory trust or provides for the governance of the affairs of the statutory trust and the conduct of its business." *Id.* (eff. to July 31, 2010). The current version differs substantively only in that it defines "[g]overning instrument," in part, as "any *written* instrument…." 12 Del. Code § 3801(e) (eff. Aug. 1, 2024) (emphasis supplied).

[8] *See* #99-1 at 13-15 (certificate reflecting merger).

[9] *See* #99-1 at 16-17 (news release reflecting acquisition).

[10] *See* #99-1 at 3 (defining "Trustee" as LaSalle and its "successor-in-interest as provided in Section 8.09, or any successor trustee appointed as herein provided"); *id*. at 8 (Section 8.09: "Any Corporation into which the Trustee or the Delaware Trustee may be merged or converted or with which it may be consolidated, or any Corporation resulting from any merger, conversion or consolidation to which the Trustee or the Delaware Trustee shall be a party, or any Corporation succeeding to the corporate trust business of such trustee, shall be the successor of such trustee hereunder, provided such resulting or successor Corporation shall be eligible under the provisions of Section 8.06, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding").

Defendant cites no authority for the argument that plaintiff must proffer "actual activity in management of the Trust or this asset in particular." Under *Navarro*, the question is whether the trustee "possesses" the powers to hold, manage, and dispose of assets for the benefit of others. 446 U.S. at 464. If the question were whether the trustee "exercised the powers it possesses previously," then no trustee initially attempting to exercise the powers it possesses would be a real party to the controversy. This argument is illogical, and the court rejects it.

As of September 1, 2006, Del. Code tit. 12, § 3801(g) defined "[s]tatutory trust," in part, as "an unincorporated association which:"

> (1) Is created by a governing instrument under which property is or will be held, managed, administered, controlled, invested, reinvested and/or operated, or business or professional activities for profit are carried on or will be carried on, by a trustee or trustees or as otherwise provided in the governing instrument for the benefit of such person or persons as are or may become beneficial owners or as otherwise provided in the governing instrument…
>
> (2) Files a certificate of trust pursuant to § 3810 of this title.
>
> Any such association heretofore or hereafter organized shall be a statutory trust and a separate legal entity. …

*Id*. (eff. to July 31, 2010).[11] That the PSA states that it is "the intention" that the trust constitute a Delaware statutory one suggests that it is also "the intention" that, pursuant to the DSTA, "property is or will be held, managed, administered, controlled, invested, reinvested and/or operated…*by a*

---

[11] The current version adds to the definition above the language emphasized below:

> Any such association heretofore or hereafter organized shall be a statutory trust and, *unless otherwise provided in its certificate of trust and in its governing instrument*, a separate legal entity. … *Unless otherwise provided in a governing instrument, a statutory trust has the power and authority to grant, hold or exercise a power of attorney*. …

12 Del. Code § 3801(i) (eff. Aug. 1, 2024).

*trustee…*," *see* 12 Del. Code § 3801(g)(1) (eff. to July 31, 2010) (emphasis supplied); *see also* 12 Del. Code § 3801(i)(1) (eff. Aug. 1, 2024).

The DSTA does seem to leave open the possibility that a governing instrument could provide that property be held, managed, administered, controlled, invested, reinvested and/or operated by a non-trustee. *Id*. ("*…or as otherwise provided in the governing instrument…*") (emphasis supplied). And this PSA provides that the trust has "the power and authority to…acquire hold, lease, manage, administer, control, invest, reinvest, operate and/or transfer the Mortgage Pool Assets, the REMIC II Assets, the REMIC III Assets, and the REMIC III Regular Interests…." (#99-1 at 4) (Section 2.01(i)).[12]

Further, through this PSA, "all…right, title and interest in" the assets were conveyed to the trust.[13] *See also* #99-1 at 5 (Section 2.01: "…The assets…shall be owned by the Trust…"); #103-1 at 10 (Section 2.20: "Legal title to all assets of the Trust shall be vested at all times in the Trust

---

[12] The PSA also provides that

> …[T]he Trustee … may execute the trust or any of the powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys selected by it with reasonable care ….

(#99-1 at 7) (Section 8.02(v)). Plaintiff seems to interpret Section 8.02(v) as a grant to the trustee of the trust's powers, *see, e.g.*, #103 at 2, but it cites no authority interpreting this or comparable language in so broad a manner. Nor does plaintiff explain why this provision, given the clause "either directly or by or through agents or attorneys," does not simply grant to the trustee the power to delegate its own powers. Ultimately, however, the court need not rely on Section 8.02(v) to find that plaintiff has met its burden.

[13] *See* SEC Link (Section 2.04: "The Company does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the Trust, without recourse, all the Company's right, title and interest in and to the Mortgage Pool Assets. … It is the express intent of the parties hereto that the conveyance of the Mortgage Pool Assets to the Trust by the Company as provided in this Section 2.04 be, and be construed as, an absolute sale of the Mortgage Pool Assets…"); #99-1 at 6 (Section 2.12, as to REMIC II Assets); #103-1 at 8 (Section 2.15, as to REMIC III Assets); *id*. at 9 (Section 2.18, as to REMIC III Regular Interests).

as a separate legal entity"). The conveyance of "all" right, title, and interest in assets "'ordinarily includes the power to bring suit to protect and maximize [their] value'...." *Wilmington Trust, Nat'l Ass'n v. 410 South Main Street, LLC*, 584 F. Supp. 3d 689, 702 (N.D. Ind. 2022) (quoting *Lasalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 471 (S.D. N.Y. 2001)) (further citations omitted).[14]

However, pursuant to the PSA, the trustee "accept[ed]" the conveyance of the assets on behalf of the trust, suggesting that the trustee also has the power to bring suit to protect and maximum their value. Thus Section 2.11 provides:

> The Trustee hereby acknowledges and accepts on behalf of the Trust the transfer and assignment pursuant to Section 2.04 to the Trust of the Mortgage Pool Assets, but without having made the review required to be made within 45 days pursuant to Section 2.07, and declares that as of the Closing Date it (or the Custodian on behalf of the Trustee) holds and shall hold any documents constituting a part of the Mortgage Pool Assets, and the Mortgage Pool Assets, as Trustee in trust, upon the trust herein set forth, for the use and benefit of all present and future Holders of the Certificates.

(#99-1 at 6). Section 2.14 provides:

> The Trustee hereby acknowledges and accepts on behalf of the Trust the assignment to the Trust pursuant to Section 2.12 of the REMIC II Assets and declares that as of the Closing Date it holds and shall hold any documents constituting a part of the REMIC II Assets, and the REMIC II Assets, as Trustee in trust, upon the trust herein set forth, for the use and benefit of all present and future Holders of the Certificates.

(#103-1 at 7-8). Section 2.17 provides:

> The Trustee hereby acknowledges and accepts on behalf of the Trust the assignment to the Trust pursuant to Section 2.15 of the REMIC III Assets and declares that as of the Closing Date it holds and shall hold any documents constituting a part of the REMIC III Assets, and the REMIC III Assets, as Trustee in trust, upon the trust herein set forth, for the use and benefit of all present and future Holders of the Certificates.

---

[14] Moreover, under the DSTA, a Delaware statutory trust may sue, and be sued. 12 Del. Code § 3804(a) (eff. to July 31, 2012); 12 Del. Code § 3804(a) (eff. Aug. 1, 2022).

*Id*. at 9. And Section 2.19 provides:

> The Trustee hereby acknowledges and accepts on behalf of the Trust the assignment to the Trust pursuant to Section 2.18 of the REMIC III Regular Interests and declares that as of the Closing Date it holds and shall hold any documents constituting a part of the REMIC III Regular Interests, and the REMIC III Regular Interests, as Trustee in trust, upon the trust herein set forth, for the use and benefit of all present and future Holders of the Certificates.

*Id*. at 10. Defendant offers no interpretation of these sections. She does not argue, for instance, that in accepting the conveyance of the assets on behalf of the trust, plaintiff does not also have the power to bring suit to protect or maximize their value.

Defendant does argue that the successor servicer, Select Portfolio Servicing, Inc. ("SPS"), is the real party to the controversy. (#100 at 2, 4, 5.)[15] She primarily relies, *see id*. at 3, on so much of Section 3.01 of the PSA that provides that the servicer

> …shall have full power and authority to do or cause to be done any and all things in connection with such servicing and administration which a prudent servicer of mortgage loans would do under similar circumstances, including, without limitation, the power and authority to bring actions and defend the Mortgage Pool Assets on behalf of the Trust in order to enforce the terms of the Mortgage Notes.

(#103-1 at 11) (Section 3.01).[16]

Plaintiff argues in further response, persuasively, that the servicer administers the mortgage loans owned by the trust under the supervision and direction of the trustee, as evidenced by the

---

[15] There is no claim or proof that at the time this complaint was filed in 2022, SPS was nondiverse. Plaintiff and SPS removed Taslis II to federal court, and Mr. Taslis did not seek remand to state court. At least at the time that complaint was removed in 2013, SPS was, from all that appears, a citizen of Utah. *See* #13-cv-13045-MLW, #1 at 2 (¶¶ 4, 6).

[16] The court has already addressed, and rejected, defendant's reliance on Section 2.20 of the PSA. *See* #100 at 4. Her reliance on Section 2.03 ("Separateness Requirement"), *see* SEC Link, and on 12 Del. Code § 3801(i) (formerly, (g)) to the extent that it provides that a Delaware statutory trust is a "separate legal entity," *see* #100 at 4, is misplaced for the reasons explained in Part II, *supra*, and the Preliminary Order.

fact that the servicer requests the mortgage files from the trustee in certain circumstances, *see* #103 at 4 & nn. 12-14 (citing #103 at 21-22 (Section 3.10)), and the fact that the servicer must file regulatory compliance reports with the trustee, *see id*. at 3 & n.11 (citing #103 at 22-23 (Section 3.13)).[17]

Plaintiff also persuasively argues that the servicer administers the mortgage loans owned by the trust under a delegation of authority by the trustee. (#103 at 5.) Thus Section 3.01 of the PSA provides, in part:

> …The Trustee on behalf of the Trust shall execute and furnish to the Servicer, at the Servicer's direction, any powers of attorney and other documents prepared by the Servicer and determined by the Servicer to be necessary or appropriate to enable the Servicer to carry out its supervisory, servicing and administrative duties under this Agreement….

(#103 at 13) (Section 3.01)). In 2018, the trust, by and through plaintiff, as trustee, granted JP Mortgage Chase Bank, National Association, as servicer, a limited power of attorney to, among other things,

> [d]emand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to and claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to…foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure….

(#103 at 44, 51). Later in 2018, JP Morgan Chase Bank, National Association appointed SPS as sub-servicer, limited to those transactions for which plaintiff, as trustee, had appointed JP Morgan Chase Bank, National Association. *Id.* at 35, 39.

---

[17] The court also notes that in certain circumstances, the trustee becomes the successor to the servicer. *See* SEC Link (Sections 6.04, 7.01(a), 7.02(a)).

Significantly, defendant does not call the court's attention to any section of the PSA providing that the servicer's "power and authority to bring actions and defend the Mortgage Pool Assets on behalf of the Trust in order to enforce the terms of the Mortgage Notes" is exclusive, meaning that the trustee cannot also bring such actions, given its acceptance of the conveyance of the assets on behalf of the trust. *Cf.*, *e.g.*, *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Property LLC*, 859 F. Supp. 2d 602, 606-609 (S.D. N.Y. 2012) (wherein the right, title, and interest in the mortgage pool assets were conveyed to the trustee; rejecting the argument that the servicer was a "real party in interest" for purposes of Fed. R. Civ. P. 17(a) in part because the PSA did not delegate to the servicer, exclusively, the power to sue; also declining to consider the servicer's citizenship for purposes of diversity jurisdiction in part because the servicer would only have been suing as the representative of the trustee, and the PSA required the trustee's written consent for the servicer to bring an action).

IV. Conclusion.

For the reasons explained in the Preliminary Order and above, defendant's motion to dismiss for lack of subject matter jurisdiction, #76, is denied.


April 11, 2025                                        /s/ M. Page Kelley
                                                     M. Page Kelley
                                                     United States Magistrate Judge